2015 JUN 29 AM 10: 3ɔ



# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

|  |  |  |
|---|---|---|
| STATE OF WASHINGTON, | ) ) ) | No. 70904-6-I |
| Respondent, | ) ) | DIVISION ONE |
| v. | ) ) ) | |
| ALAN JOHN NORD, | ) ) | UNPUBLISHED |
| Appellant. | ) ) ) | FILED: June 29, 2015 |

Cox, J. — Alan Nord appeals his judgment and sentence for unlawful possession of a controlled substance and resisting arrest. He claims to have been prejudiced by the jury's discovery of a cell phone in a backpack that had been admitted into evidence. He also claims that the State committed pretrial misconduct under CrR 8.3. Finally, he claims that the information fails to contain essential elements of the charge for resisting arrest.

We assume, without deciding, that the cell phone the jury discovered during its deliberations, which was in a backpack that the trial court properly admitted into evidence, is extrinsic evidence. Nevertheless, there is no reasonable ground to believe that Nord was prejudiced by the jury's discovery. Other evidence admitted at trial connected Nord to the backpack. Nord's

misconduct claim is not persuasive. However, the information fails to allege all the essential elements of the resisting arrest charge.

We affirm Nord's conviction of unlawful possession of a controlled substance and accept the State's proper concession that the information fails to state all the essential elements of resisting arrest. We remand for dismissal, without prejudice, of the resisting arrest charge.

The State charged Nord with unlawful possession of a controlled substance and resisting arrest.

At trial, a police officer testified that he saw Nord driving a car with two passengers. He observed Nord exit the car and engage in what appeared to be a drug transaction. The officer and his partner then approached Nord and asked for his identification. Nord told the officer that his identification was inside his backpack, in the car he had been driving. While the officer went to the car, Nord ran away. Police did not apprehend him at that time.

The officer went to the car Nord had been driving and asked the two passengers in the car to pass him the backpack that Nord had mentioned. They did not.

A drug dog arrived on the scene and alerted to the possible presence of drugs in the car. The officer instructed the two passengers in the car to exit the vehicle and to take all of their property with them. They did so. Neither took the backpack, which remained in the car after the police impounded the car.

After obtaining a search warrant, the officer who testified at trial searched the car and the backpack. Inside the backpack, he found a small safe, which

2

contained methamphetamine and drug paraphernalia. The officer also testified that the backpack contained a knife and a laptop. He further testified that the backpack might have contained other personal effects, but could not remember specifically what they were.

Police later located Nord. When they attempted to arrest him, he resisted. The resisting arrest charge arose from this incident.

On June 17, 2013, the parties were scheduled to present pretrial motions and begin the trial. But after a CrR 3.5 hearing, the State decided to subpoena an additional witness. The same public defender's office represented both Nord and this witness, creating a potential conflict of interest. The court granted a continuance based on this conflict. Nord did not object to the continuance. Before the continuance, Nord's CrR 3.3 speedy trial expiration date was on July 17.[1]

The parties resolved the potential conflict of interest by June 27. Nord never moved to set his trial date before the CrR 3.3 speedy trial expiration. Although Nord's trial did not begin until August 5, this was due to additional good cause continuances.

On August 5, Nord moved to dismiss the case, alleging that the State had mismanaged the case by subpoenaing the additional witness. According to this motion, the State's actions forced Nord to give up his right to a speedy trial. The court denied the motion, and trial began that day.

---

[1] CrR 3.3(b)(5), (e)(3).

During trial, the State introduced and the court admitted into evidence several exhibits. They included the backpack where the police discovered the methamphetamine on which the possession of a controlled substance charge was based. When the State offered the backpack into evidence, Nord stated that he had no objection.

The State also offered other items into evidence, including a knife and a safe that had been inside the backpack. From our review of the record, it appears that there likely were other items in the backpack when the court admitted it into evidence. But it is unclear to us why neither the State nor Nord was aware that the backpack also contained a cell phone when the court admitted the backpack.

While the jury deliberated, it appears that it discovered a cell phone in the backpack. The jury sent the court a question. The question read, "When reviewing items from backpack, there is a cell phone. Can we use as evidence? [sic]"

The court asked both counsel for their views on how to answer the question. The State urged the court to answer in the affirmative. Nord disagreed, urging the court to answer in the negative. The court agreed with the State and answered "yes" to the jury's question.

Shortly thereafter, the jury returned its verdict, convicting Nord on both counts.

Nord appeals.

4

## EXTRINSIC EVIDENCE

Nord argues that the cell phone was extrinsic evidence because it was unknown that it was inside the backpack when the court admitted the backpack into evidence. Based on this assertion, he claims he was prejudiced by the jury's discovery of the cell phone during its deliberations. We hold that it is unnecessary to decide whether the cell phone was extrinsic evidence. Assuming, without deciding, that it was, there is no reasonable ground to believe Nord was prejudiced by the discovery.

"'[E]xtrinsic evidence is defined as information that is outside all the evidence admitted at trial.'"[2] Such "'evidence is improper because it is not subject to objection, cross-examination, explanation or rebuttal.'"[3]

Washington courts apply "'the long-standing rule'" that "'consideration of any material by a jury not properly admitted as evidence vitiates a verdict when there is a reasonable ground to believe that the defendant may have been prejudiced.'"[4] This is an objective inquiry.[5] We consider "whether the extrinsic

---

[2] State v. Pete, 152 Wn.2d 546, 552, 98 P.3d 803 (2004) (emphasis omitted) (internal quotation marks omitted) (quoting State v. Balisok, 123 Wn.2d 114, 118, 866 P.2d 631 (1994)).

[3] Id. at 553 (internal quotation marks omitted) (quoting Balisok, 123 Wn.2d at 118).

[4] In re Pers. Restraint of Glasmann, 175 Wn.2d 696, 705, 286 P.3d 673 (2012) (quoting Pete, 152 Wn.2d at 555 n.4).

[5] State v. Boling, 131 Wn. App. 329, 332, 127 P.3d 740 (2006).

evidence could have affected the jury's determinations," not the "subjective thought process of the jurors."[6]

Here, it is implicit in Nord's argument that the cell phone contained information that could have linked him to the backpack where police discovered the drugs. Also implicit in this argument is that information on the cell phone was accessible to the jury when it discovered the cell phone during deliberations. Because no one made a record about either of these points when the issue arose below, there is nothing in this record to substantiate either point.

We note that it is unclear to us whether the cell phone qualifies as extrinsic evidence. That is because this case differs from the extrinsic evidence cases that we have considered. Those cases typically involve either accidentally giving the jury exhibits that were marked but not admitted,[7] or misconduct by the jury.[8] Here, in contrast, the cell phone remained in the backpack because neither party thoroughly examined it before the court properly admitted the backpack into evidence.

But we need not decide whether the cell phone is extrinsic evidence. It is clear that what the cell phone inside the backpack may have contained was

---

[6] Id. at 332-33.

[7] See, e.g., Pete, 152 Wn.2d at 550-52; State v. Rinkes, 70 Wn.2d 854, 859-62, 425 P.2d 658 (1967).

[8] See, e.g., State v. Fry, 153 Wn. App. 235, 238-39, 220 P.3d 1245 (2009); State v. Johnson, 137 Wn. App. 862, 866, 155 P.3d 183 (2007).

never "subject to objection, cross-examination, explanation or rebuttal."[9] That is because neither the parties nor the court was aware of it when the court properly admitted the backpack. Thus, in an abundance of caution, we assume without deciding that the cell phone should be treated as extrinsic evidence. Accordingly, the question becomes whether there is a reasonable ground to believe that Nord was prejudiced by the jury's discovery of the cell phone.

We conclude that there are no reasonable grounds to believe that Nord was prejudiced by the jury's discovery.

The State had a strong case against Nord. Before the stop, officers had seen Nord engage in a "hand to hand" transaction typical of drug sale. Nord was also the one who first indicated to the officer questioning him that his identification was in a backpack in the car he had been driving. The only backpack remaining in the car after the other occupants left it contained the drugs serving as the basis for the unlawful possession charge. This was sufficient to show that Nord either owned the backpack or had possession of it when driving the car.

Other evidence corroborates Nord's tie to the backpack and the drugs found in it. When the passengers were told to take their belongings and leave the car, neither took the backpack.

And significantly, Nord fled the scene. When the officer who approached Nord at the stop asked him about identification, Nord stated that his identification

---

[9] Pete, 152 Wn.2d at 553 (internal quotation marks omitted) (quoting Balisok, 123 Wn.2d at 118).

was in a backpack in the car. After pacing nervously outside the car, Nord fled while the officer went to retrieve the backpack. Doing so under these circumstances is evidence of guilt.[10]

Thus, because the State presented strong evidence linking Nord to the backpack, there is no reasonable ground to believe that he was prejudiced by the jury's discovery of the cell phone.

Nevertheless, Nord argues that he was prejudiced by the jury's discovery of the cell phone in the backpack during deliberations for several reasons. But his arguments are speculative and unpersuasive.

First, Nord argues that the jury could have found information on the cell phone that linked him to the backpack. But this record does not establish whether the jury actually found information on the cell phone that was prejudicial to him during its deliberations. To the extent that he concedes, for purposes of appeal only, that the cell phone was his, this is still insufficient to show prejudice in view of the other evidence to tie him to the backpack that we previously discussed.

Second, Nord argues that the evidence against him was weak. He argues that he was not the registered owner of the car and that the backpack could have belonged to one of the passengers. But the charge did not require establishing that he was the registered owner of the car. And the assertion that the backpack belonged to one of the other passengers is unpersuasive since they were told to

_____

[10] See State v. McDaniel, 155 Wn. App. 829, 853-54, 230 P.3d 245 (2010).

8

take their belongings when they were told they could go and none took the backpack.

Third, Nord argues that the officer did not find his identification in the backpack. Although this is true, it misses the point. Nord identified the backpack as the place where his identification could be found, establishing his link to the backpack. That identification was not actually found is not dispositive.

Fourth, he argues that his flight from the scene could have been for other reasons. We agree. But that does not overcome the fact that the jury could also have found that his flight was evidence of guilt for the drug charge in this case.

Fifth, Nord argues that other items inside the backpack could have prejudiced him. Statements by the prosecutor and the officer who searched the backpack indicate that it may have contained a laptop computer. But when Nord's appellate counsel examined the backpack, it did not contain a laptop. Nord argues that if the laptop was inside the backpack, the jury may have been able to turn it on and find additional information connecting Nord to the backpack.

But this argument is wholly speculative. In order to find prejudice, the court would have to assume that the laptop was in the backpack, the jury found the laptop, the jury was able to turn on the laptop and obtain access to information it contained, and information on the laptop linked Nord to the backpack. The record fails to establish any of this.

Finally, Nord argues that the prosecutor committed misconduct by intentionally submitting extrinsic evidence to the jury. He argues that this court

should not allow "parties to effectively sneak in 'evidence' through [containers.]" This is not a fair reading of this record, and we reject the argument.

There simply is no evidence that the prosecutor tried to "sneak in" evidence to the jury. Rather, it appears from a fair reading of the record that the prosecutor did not thoroughly examine the backpack before offering it into evidence. The prosecutor stated, and we have no reason to doubt, that "I haven't examined the contents [of the backpack], but it was obvious that it was not empty."[11]

We need not address whether "it was obvious that [the backpack] was not empty" when offered into evidence. The record is clear that neither counsel thoroughly examined the backpack before the court admitted it.

In sum, the jury's discovery of the cell phone in the backpack during deliberations did not prejudice Nord.

## CrR 8.3

Nord argues that the State committed misconduct under CrR 8.3 by waiting until the day of trial before subpoenaing a witness, "forc[ing] Nord to choose between conflict free counsel and his [CrR 3.3] right to a speedy trial." We disagree.

Under CrR 8.3(b), "The court, in the furtherance of justice, after notice and hearing, may dismiss any criminal prosecution due to arbitrary action or

---

[11] Report of Proceedings (August 7, 2013) at 325.

governmental misconduct when there has been prejudice to the rights of the accused which materially affect the accused's right to a fair trial."

There are two requirements for a dismissal under this rule. First, the "defendant must show arbitrary action or governmental misconduct."[12] Second, the defendant must show "prejudice affecting the defendant's right to a fair trial."[13]

Under this analysis, forcing the defendant to waive CrR 3.3 speedy trial rights is prejudice.[14] In State v. Michielli, the State initially charged the defendant with a single count of theft, with a potential sentencing range from 0 to 60 days.[15] Three business days before trial, the prosecutor amended the information to add four new charges, with a potential sentencing range from 15 to 20 months.[16] The additional charges were not based on new information.[17] The supreme court held that the "[d]efendant was prejudiced in that he was forced to waive his speedy trial right and ask for a continuance to prepare for the surprise charges brought three business days before the scheduled trial."[18]

---

[12] State v. Michielli, 132 Wn.2d 229, 239, 937 P.2d 587 (1997).

[13] Id. at 240.

[14] Id. at 244.

[15] 132 Wn.2d 229, 233, 937 P.2d 587 (1997).

[16] Id.

[17] Id. at 243.

[18] Id. at 244.

This court reviews "[a] court's power to dismiss charges" under CrR 8.3 for abuse of discretion.[19]

Here, the court did not abuse its discretion by denying Nord's motion under CrR 8.3. The prosecutor's request for a continuance was not misconduct, and Nord did not suffer prejudice.

When the prosecutor sought a continuance, he noted that he had been unaware of some of the facts elicited at the CrR 3.5 hearing. And in light of these facts, he decided to subpoena an additional witness.

Nord now argues that the prosecutor should not have learned anything new at the hearing, because only the State's witnesses testified. But Nord did not make this argument at the time. Additionally, Nord had initially agreed to plead guilty in both this case and an unrelated case. But at the plea hearing on June 6, 2013, which was shortly before the scheduled trial, Nord changed his mind and decided to go to trial. Both of Nord's cases were scheduled to go to trial within a week of each other. And the same prosecutor was handling both cases. Thus, even if the prosecutor was not as prepared for trial as normal, it does not indicate that he mismanaged the case so severely that it constituted misconduct.

Additionally, Nord cannot show prejudice. The conflict created by subpoenaing the witness had been resolved by June 27, 10 days after the State moved for the continuance. Before the continuance, Nord's speedy trial expiration date was on July 17. His trial did not begin before this date because

---

[19] Id. at 240.

his other trial was set for July 8 and his counsel was unavailable on July 15. Although trial did not begin until August 5, this was due to additional good cause continuances. Thus, the delay caused by the State's initial continuance was minimal, and Nord cannot show prejudice.

Nord argues that this case resembles Michielli. But the present case is distinguishable. First, in Michielli, the prosecutor filed four additional charges without learning any new facts.[20] In the present case, the prosecutor sought a short continuance after discovering additional facts. Additionally, the defendant in Michielli suffered much greater prejudice—four new charges that increased his potential sentencing range from 0 to 60 days to 15 to 20 months.[21] Thus, Michielli is not analogous to Nord's case.

Nord also argues that the court abused its discretion by granting the State a continuance on the day of trial.

But Nord failed to object to the continuance. On appeal, he argues that the court abused its discretion "[b]ecause the conflict was speculative and the State inexcusably delayed in deciding" to subpoena the additional witness. But Nord did not make these arguments when the State sought the initial continuance. At trial, when the court asked Nord's attorney about the proposed continuance, he replied only by stating that the conflict of interest put Nord in "a difficult position" and reiterating that Nord would prefer to have new counsel.

---

[20] Id. at 243.

[21] Id. at 233.

Accordingly, we conclude that Nord failed to preserve this issue for appeal, and we do not address it further.

## SUFFICIENCY OF CHARGING DOCUMENT

Nord argues that the information for his charge of resisting arrest is insufficient. We agree.

Charging documents must include "all essential elements of a crime, statutory and non-statutory."[22] Essential elements are "'those facts that must be proved beyond a reasonable doubt to convict a defendant of the charged crime.'"[23]

When the defendant does not challenge the charging document until after the verdict, courts "more liberally construe[] [the document] in favor of validity."[24] "Under this rule of liberal construction, even if there is an apparently missing element, it may be able to be fairly implied from language within the charging document."[25]

Under this rule, courts apply a two-prong test: "(1) do the necessary facts appear in any form, or by fair construction can they be found, in the charging

---

[22] State v. Vangerpen, 125 Wn.2d 782, 787, 888 P.2d 1177 (1995).

[23] State v. Zillyette, 178 Wn.2d 153, 158, 307 P.3d 712 (2013) (internal quotation marks omitted) (quoting State v. Powell, 167 Wn.2d 672, 683, 223 P.3d 493 (2009)).

[24] State v. Kjorsvik, 117 Wn.2d 93, 102, 812 P.2d 86 (1991).

[25] Id. at 104.

document; and, if so, (2) can the defendant show that he or she was nonetheless actually prejudiced by the inartful language which caused a lack of notice?"[26]

Under the first prong, the essential question is "whether all the words used would reasonably apprise an accused of the elements of the crime charged."[27]

The remedy for a conviction based on a defective information is dismissal without prejudice.[28]

Here, the State properly concedes that the information did not appraise Nord of all of the essential elements of resisting arrest, even under the post-verdict standard of review.

Under RCW 9A.76.040, "A person is guilty of resisting arrest if he or she intentionally prevents or attempts to prevent a peace officer from lawfully arresting him or her."

Under the plain text of RCW 9A.76.040, both intentional resistance and a lawful arrest are essential elements. Here, the information charging Nord alleged that he "did prevent or attempt to prevent a police officer from arresting him." Thus, the information did not allege that the resistance was intentional or that the arrest was lawful. This is fatal.

---

[26] Id. at 105-06.

[27] Id. at 109.

[28] Vangerpen, 125 Wn.2d at 792-93.

Because the information does not reasonably appraise Nord of all essential elements of resisting arrest, the proper remedy is to remand to the trial court for dismissal, without prejudice, of this charge.

We affirm the conviction for possession of a controlled substance. We remand to the trial court for dismissal, without prejudice, of the resisting arrest charge.

_Cox, J._

WE CONCUR:

_Trickey, J_                                _Spearman, C.J._